IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JAMES KATTERMAN,<br><br>Plaintiff,<br><br>v.<br><br>SALT LAKE COUNTY, POLICE CHIEF JAMES D. WINDER, KEVIN S. BARRETT, OFFICER KYLE GLEUE, OFFICER JARED ANGELL, UNIFIED POLICE DEPARTMENT OF GREATER SALT LAKE, also known as or functioning as SALT LAKE COUNTY SHERIFF, and JOHN DOES 1-15,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT SYLVAN MALIS (ECF No. 60)**<br><br>Case No. 2:13-CV-1122-EJF<br><br>**Magistrate Judge Evelyn J. Furse** |

Defendants Salt Lake County, Police Chief James D. Winder, Officer Kevin S. Barrett, Officer Kyle Gleue, Officer Jared Angell, the Unified Police Department, and the Salt Lake County Sheriff's Office ("Defendants") move, *in limine*, to exclude the expert testimony of James Katterman's Expert, Sylvan Malis, used in Mr. Katterman's Opposition to Defendants' Motion for Summary Judgment, (ECF No. 57). (Defs.' Obj. to, & Mot. in Limine to, Exclude Test. of Pl.s' Canine Expert Sylvan Malis (Mot. to Exclude), ECF No. 60.) Defendants seek to exclude Mr. Malis's testimony on four specific propositions:

[1.] "Mr. Malis, while stating he had received no specific training in analyzing dog bites, did not concede that he had no expertise in this matter. He said he had received medical/EMT training that, combined with his experience with dogs, gave him the ability to distinguish what he called a "laceration" from a "puncture." (Doc. 57, Response to Defendants Fact #52)

[2.] "Sylvan Malis testified he reviewed <u>a summary</u> of Vortex and Officer Barrett's training certifications in preparation for his report" (Doc. 57, Fact #11) (emphasis added)

[3.] "Mr. Malis testified that because Vortex was not trained in tracking or trailing, it was unreasonable for Officer Barrett to allow Vortext [sic] to engage Mr. Katterman because he could not have known that it was Mr. Katterman sitting next to the driveway." (Doc. 57, Fact #12)

[4.] "Mr. Malis testified that, given the documents he had reviewed, it was his opinion that Officer Barrett was not adequately trained and supervised as a K-9 handler." (Doc. 57, Fact 13)

(Mot. to Exclude 2, ECF No. 60.) Having considered the parties' briefing and the case record, the Court GRANTS Defendants' Motion.[1] The Court will exclude Mr. Malis's testimony on each proposition as inadmissible expert testimony for purposes of the Summary Judgment Motion.

## DISCUSSION

To determine the admissibility of an expert opinion, this Court applies a two-part test. *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013). First, Mr. Katterman bears the burden of demonstrating that the expert has the qualifications to opine on the designated topic by reason of "knowledge, skill, experience, training, or education." *Id.* (quoting Fed. R. Evid. 702). For the proffered expert to pass this initial hurdle, s/he must possess expertise in the "particular field" of the subject opined upon, or the subject must fall "within the reasonable confines" of the person's expertise. *Id.* at 1168-69 (quoting *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004); *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001)). The second step asks whether "the proposed expert testimony is both reliable and relevant." *Id.* at 1168 (quoting *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006)). In applying this test, the Court functions as a gatekeeper, ensuring that it only admits testimony from qualified witnesses with "knowledge [that] will help the trier of fact to understand the evidence or to determine

---

[1] Pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the undersigned finds oral argument unnecessary and makes its decision on the basis of the written memoranda.

a fact in issue." Fed. R. Evid. 702(a); *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993) (describing gatekeeper function).

Defendants move to exclude Mr. Katterman's use of Sylvan Malis with regards to four distinct propositions. (Mot. to Exclude 2, ECF No. 60 ("Mr. Katterman cites to Mr. Malis for the following four propositions…").) The Court will discuss the first proposition separately and then address the second, third, and fourth proposition together because they share the same subject matter.

### I. The Court Finds Mr. Malis's Expert Testimony on Proposition #1 Inadmissible

Defendants seek to exclude consideration of Mr. Malis's opinion that Mr. Katterman suffered a laceration not a puncture wound. (Mot. to Exclude 2, ECF No. 60.) Defendants challenge Mr. Malis's medical expertise and the reliability of his conclusions regarding the appearance of dog bites. (Mot. to Exclude 9-10, ECF No. 60.) Defendants argue that Mr. Katterman's failure to address Sylvan Malis's medical expertise in his Opposition, and how it qualifies him to opine on dog bites, means he concedes the point. (Reply Mem. in Supp. of Defs.' Obj. to, and Mot. in Limine to, Exclude Test. of Pl.s' Canine Expert Sylvan Malis (Reply) 2-3, ECF No. 65.) The burden of showing the admissibility of the testimony falls on the expert testimony's proponent. *Conroy*, 707 F.3d at 1168. Absent any argument to the contrary, (*see* Pl.s' Resp. Mem. in Opp'n to Defs.' Obj. to, and Mot. in Limine to, Exclude Test. of Pl.s' Canine Expert Sylvan Malis (Opp'n), ECF No. 64), the Court excludes Mr. Malis's opinion concerning whether Mr. Katterman suffered a laceration or a puncture for purposes of summary judgment.

### II. The Court finds Mr. Malis's Expert Testimony on Propositions #2, #3, and #4 Inadmissible

The Defendants seek to exclude Mr. Malis's opinion that Officer Barrett and Vortex received inadequate training, rendering deployment of Vortex unreasonable, as well as Mr. Malis's testimony that he reviewed summaries of Officer Barrett and Vortex's training certifications. (Mot. to Exclude

3

2, ECF No. 60.)  For the Court to admit Mr. Malis's expert testimony regarding Vortex's training and capabilities, as well as Officer Barret's training, Mr. Katterman must demonstrate Mr. Malis's qualifications in this subject area, either through expertise in the "particular field" or experience such that these topics fall "within the reasonable confines" of Mr. Malis's expertise.  *Conroy*, 707 F.3d at 1168.

     Mr. Katterman argues that Mr. Malis possesses the qualifications necessary to opine on "the skills and requirements necessary for employment as a police dog" because of his background training dogs for security and law enforcement purposes.  (Opp'n 5, ECF No. 64.)  Mr. Malis founded Property Security Systems as a security alarm company in approximately 1975 and worked as a supervisor and dog trainer there until the mid-1980s.  (Malis Dep. 16, 44-48, Exh. 1, ECF No. 60-1.)  During that time period, Mr. Malis personally trained approximately ten to twenty dogs.  (*Id.* at 45.)  Mr. Malis does not know whether he had a personal role in training any dogs that went on to work at police or sheriff's departments but estimates that Property Security Systems sent five to ten dogs to law enforcement agencies during that time period.  (*Id.* at 46.)  The company never certified dogs directly but prepared them to "be pretty close to being able to pass any certifying organization's… procedures."  (*Id.* at 48.)  Mr. Malis prepared dogs by incorporating the "best parts" of various certification requirements into his dog training program, which he based upon the Koehler system of dog training.  (*Id.* at 43, 48.)

     After Property Security Systems closed down in the mid-1980s, Mr. Malis continued training dogs, although none of these dogs went to law enforcement agencies; rather he trained all of them "for basic asset protection."  (*Id.* at 48-49.)  In his post-Property Security Systems dog work, Mr. Malis continued to include "certain functions" of police dogs in his training.  (*Id.* at 51.)

Mr. Katterman cites *Ralston v. Smith & Nephew Richards, Inc.* for the proposition that "a lack of specialization will not affect the admissibility of an expert's opinions" so long as the expert stays within the reasonable confines of his expertise. (Opp'n 5-6, ECF No. 64 (citing 275 F.3d 965, 969 (10th Cir. 2001) *(quoting Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991))).) Defendants cite the same case in their Reply, interpreting it to say, "general expertise in an area does not qualify someone as an expert in a specific area." (Reply 4, ECF No. 65 (citing *Ralston,* 275 F.3d at 969).) Turning to *Ralston* directly, the Tenth Circuit held the district court did not abuse its discretion when it determined that the proffered expert lacked the requisite qualifications, despite a familiarity with general principles and concepts of the field. *Ralston,* 275 F.3d at 970. The portion of *Ralston* cited by Mr. Katterman quotes another case, *Compton v. Subaru*. *Ralston,* 275 F.3d at 969-70 (quoting 82 F.3d 1513 (10th Cir. 1996)). *Compton*, in turn, quotes the Tenth Circuit in *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991). Thus, tracing Mr. Katterman's proposition back to its roots brings us to a pre-*Daubert* opinion. In fact, the *Ralston* court warns, "*Compton* 's citation to *Wheeler v. John Deere* for the precept that reliance upon general principles and concepts is sufficient for admissibility of expert testimony is itself questionable as *Wheeler* is a pre-*Daubert* opinion." *Ralston,* 275 F.3d at 969-970. *Ralston* also cautions overreliance on *Compton*, "the *Compton* court merely held that the trial court *did not* abuse its discretion when it *admitted* expert testimony based upon the expert's familiarity with general engineering principles and concepts. That is a far cry from suggesting that a district court *always* abuses its discretion when it *excludes* an expert who may have *some* marginal familiarity with general concepts in the relevant field." *Id.*

Mr. Malis, by his own admission, has only trained roughly ten dogs since the mid-1980s, and he trained all of those dogs for "basic asset protection," not law enforcement. (Malis Dep. 48-49, Exh.

5

1, ECF No. 60-1.) Mr. Malis trained dogs for various capacities from the mid-1970s to mid-1980s, and during that period his company successfully sent five to ten dogs to law enforcement agencies. (*Id.* at 46.) Mr. Malis does not know whether he had a personal role in training any of these agency-bound dogs, and Mr. Malis never certified any dogs for police work. (*Id.* at 45-46.) Rather Property Security Systems prepared dogs to meet some requirements of various certification processes. (*Id.* at 46-47.) Neither Mr. Malis nor his company ever trained police dogs with their officer or officers by themselves. (*Id.* at 47.) Mr. Malis admits at least six different organizations certify dogs for police work, each with different standards, and he has never taken a certification class or "been certified as a certifier." (*Id.* at 47-48.)

Whatever role Mr. Malis played in preparing dogs to meet police certification requirements ended thirty years ago. The Court finds no evidence to support the claim that Mr. Malis has remained current in the requirements of police dog certification or that his dog training knowledge meets any objective standards. In the intervening three decades, by his own admission Mr. Malis has only trained approximately ten dogs, all for private security purposes. (*Id.* at 49.) Mr. Malis has worked in several unrelated fields since the mid-1980s, including computer consulting, wireless cable television, importing, and drinking water. (*Id.* at 33, 159-60.) Mr. Malis never received any certifications and supplied no objective evidence to support his continued education in, or knowledge of, dog training. (*Id.* at 51-55, 57-59.) At best, Mr. Malis retains some familiarity with the general concepts and principles of police dog training and handling and continues to read about such. By comparison, in *Ralston* and *Compton* the proposed experts held some objective measure of knowledge – certification as an orthopedic surgeon and an aerospace and mechanical engineer respectively. *Ralston*, 275 F.3d at 969; *Compton*, 82 F.3d at 1519-20. According to *Ralston*, general familiarity with the relevant field may provide grounds to admit testimony. *Ralston*, 275 F.3d at 970. However, *Ralston* also

permits courts to exclude expert testimony on specific subjects where the expert merely claims general familiarity with the field. In this case, Mr. Katterman has failed to put forth evidence to show Mr. Malis qualifies as an expert in either police dog training or officer training in police dog handling. The undersigned finds that based on the evidence put forward by Mr. Katterman, Mr. Malis lacks current expertise on the specific topic areas in question. The Court EXCLUDES Mr. Malis's testimony on Propositions #2, #3, and #4 because Mr. Malis fails to qualify as an expert in police dog training or officer training in police dog handling.

Additionally, Mr. Malis's testimony regarding Proposition #2 fails step two of the admissibility test because it would not help the Court "to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *Conroy*, 707 F.3d at 1168-69. Whether Mr. Malis reviewed training certificates does not speak to a material issue given the Court's exclusion of Propositions #3 and #4.

## CONCLUSION

For the reasons discussed above, the Court GRANTS Defendants' Motion. The Court EXCLUDES Propositions #1, #2, #3, and #4 as inadmissible expert testimony.

DATED this 30th day of March 2017.

BY THE COURT:

EVELYN J. FURSE
United States Magistrate Judge